

FILED

Sep 11 2025, 1:29 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Indiana Supreme Court

Supreme Court Case No. 25S-JD-69

## In the Matter of the Honorable
## Matthew J. Elkin, Judge of the
## Howard Superior Court,
*Respondent.*

Decided: September 11, 2025

Judicial Discipline Action

**Per Curiam Opinion**

Chief Justice Rush and Justices Massa, Slaughter, Goff, and Molter concur.

**Per curiam.**

We find that Respondent, the Honorable Matthew J. Elkin, Judge of the Howard Superior Court, engaged in judicial misconduct by failing to disqualify himself from presiding over matters in which he previously represented a party, making injudicious comments toward problem-solving court ("PSC") participants, favoring certain litigants while degrading others, inadequately supervising employees, and possibly misusing court funds.

This matter is before us on the Indiana Commission on Judicial Qualifications' ("Commission's") "Notice of the Institution of Formal Proceedings and Statement of Charges" against Respondent. The parties jointly tendered a "Statement of Circumstances and Conditional Agreement for Discipline" stipulating to the below facts and agreed sanction—Respondent's resignation from office and a permanent ban from judicial service.

# Procedural Background and Facts

Respondent began serving as judge of the Howard Superior Court in January 2023. While Respondent presided over a general jurisdiction docket, he also presided over cases in Howard County's Drug Court and Re-Entry Court. These PSCs provide individually tailored services and intensive judicial monitoring to help defendants address their substance use issues or reintegration needs. *See* I.C. §§ 33-23-16-5, -9. Each PSC has a team that monitors a participant's case. These teams consist of a case manager, service providers, attorneys, probation officers, a coordinator, and anyone else approved by the PSC judge.

Before his election, Respondent primarily worked as a public defender. In fact, Respondent served as the appointed public defender for both PSCs, giving general legal advice to the participants. Yet, Respondent made an incomplete list of his conflicted cases upon taking the bench. He presided over several PSC matters involving participants he had represented as defense counsel. Respondent failed to disqualify himself from at least eleven cases involving his former clients until after the

Commission notified Respondent of its inquiry into misconduct allegations.

Respondent's misconduct continued during PSC hearings. While many PSC judges take a more hands-on approach to addressing problems and changing participants' behaviors, Respondent employed inappropriate tactics to that end, including a ruse he dubbed "Game or Jail." In October 2023, the Re-Entry Court team notified Respondent that participant R.P. had violated a PSC rule. During the October 26 Re-Entry Court hearing, Respondent directed the court's security officer to handcuff F.H., another participant. Respondent told R.P. and F.H. that if R.P. lied to Respondent about the rule violation, F.H. would go to jail. At the time, F.H. had not committed any rule violations, and neither F.H. nor R.P. was in custody.

In other proceedings, Respondent demeaned and ridiculed participants. During one hearing, he told participant L.G., a domestic violence survivor:

> "Do you know who Tom Brady is? How many Super Bowls? Seven Super Bowls he's won. When Tom Brady wins a Super Bowl, his brain is filled with all kinds of neurochemicals. All right? And he gets to scream, you know, I'm going to Disney World … Now, I know he's not married, he's not in a relationship anymore, but what he used to be able to do is he got two big brain rushes because he got to go I won the Super Bowl and then the next thought is I get to f*ck the super model. Okay?

> "If I smack the sh*t out of you right now, what chemicals get dumped in your brain? The exact same chemicals he experiences when he wins the Super Bowl. Did you know that? So the whole thing is every time I beat you up or you beat me up, we won the Super Bowl … So if I smack you in the head and you feel the exact same way so you can enjoy the relationship. That's what happens.

> "That's the truth. That's why women don't leave. It gets worse. He experiences it once because he won the Super Bowl. You can cause yourself to experience that emotion at least two more times after you've been hit. One is if you feel guilty about having had your a*s

kicked, the exact same chemicals dump into your brain. You feel real shame over it. Then if you get angry over the fact that this person did it to you, it happens a third time. Here's the deal, I can train an entire lifetime for one shot at winning the Super Bowl and experiencing that elation, or I can have somebody kick my a*s and I can do it three times. Which is easier?

"You don't deserve this chance. You don't deserve it. … I know what's wrong with you and I know how to fix you.

"You're not even my property yet. Do you know that you're the Department of Correction's property for 98 days, right? No, six months. Right?"

During other PSC hearings, Respondent (1) displayed a plastic bag to mimic a pack of adult diapers while discussing participant M.B.'s write-up at work release; (2) displayed a sign for participant N.H. that said, "watching you"; (3) required participant V.S.'s Notice of Termination from the program to state that V.S. sexually violated himself with a vape; (4) told participant R.B. that he was "making sh*t up in his brain"; (5) ordered participant K.M. to be tested for sexually transmitted diseases and discussed—on the record—medical conditions K.M. could have if K.M. was "on the wrong side of a test"; and (6) used the word "stupid," which could have been interpreted to describe the participants' intelligence rather than their actions.

Respondent made similar injudicious comments during one criminal hearing. In February 2023, after defendant A.L. petitioned to modify his sentence on a felony drug offense, Respondent told A.L.:

"How many people in America have as many felony convictions as you? There's 300 million people in this country. How many people have as many felony convictions as you? Here's the thing that should make your skin crawl. You have more convictions than the average child molester in this country. You are the one-third of the one percent of worst people in the planet.

"Of every person who's asked for modification here, you are the least likely to be successful. No matter what your success has been at

the DOC for however limited period of time, you are the least likely to be successful. I want that to sink into you and I want you to think about that when we evaluate you."

Respondent's misconduct continued off the bench. In October 2023, Respondent met with PSC participant T.H. at Respondent's former law office. During that meeting, Respondent disparaged and disclosed confidential information about other participants. He also demeaned PSC team members. At the meeting's conclusion, Respondent stated to T.H., "I'm not going to say what I know about you, but I know."

At other times, Respondent suggested there were "moles" on the PSC teams and that he followed or had team members followed outside of the courtroom.

Even Respondent's seemingly well-intended acts unfairly favored some PSC participants over others. One PSC participant, P.H., received a plethora of benefits that other PSC participants were not privy to. When P.H. needed housing, Respondent notified her that his wife had a rental home she could use. Respondent's wife later entered into a lease with P.H. but did not collect rent payments for a period of time. Respondent and his wife helped P.H. clean out and paint the rental home. Respondent's wife purchased clothing for P.H.'s children and gave P.H. parenting advice. Respondent also opted not to sanction P.H. for having a vape, a PSC rule violation.

After finding participant S.W. in contempt of court for violating Drug Court rules, Respondent issued a warrant for S.W.'s arrest. After S.W.'s arrest and after speaking with Respondent, the Drug Court coordinator met with S.W. in jail. S.W. agreed to release his keys to the coordinator and asked that his vehicle be stored in a safe place. The coordinator and Respondent then drove to S.W.'s apartment and located S.W.'s car. Respondent drove S.W.'s car to his wife's rental property for storage purposes. Respondent also helped arrange with S.W.'s landlord the return of S.W.'s apartment keys in exchange for S.W.'s rental deposit.

Similarly, after Respondent sanctioned participant M.R. and ordered her to be taken into custody, he arranged for M.R. to be escorted to and

from a medical facility for a previously scheduled appointment. Once back at the courthouse, the Sheriff's Department took M.R. into custody.

Respondent offered and provided rides for participants P.H., F.W., R.P., R.M., T.R., and J.B. in his personal vehicle. Respondent even allowed participant B.M. to drive his vehicle on multiple occasions in order for B.M. to accumulate the necessary driving hours to obtain his driver's license. Respondent used his own credit card to rent a car for participant T.T.

Respondent urged participant B.L. to speak with Respondent's wife about a wedding dress gift certificate, valued at $8,000. And he arranged for PSC participants to clean out A.M.'s home over a two-day period. Respondent assisted with the clean up and provided paint.

A probation officer under Respondent's supervision similarly provided preferential treatment by renting property to Re-Entry Court participant R.B. As presiding judge, Respondent was responsible for approving participants' living arrangements, and he admits he failed to properly supervise the PSC team member who rented to R.B. and conducted home visits at the rented property.

Finally, after the Commission filed its Statement of Charges against Respondent, other matters were brought to the Commission's attention, including that Respondent may have reimbursed himself for PSC trainings with unauthorized funds. The Commission has agreed to discontinue its investigation into these other matters given Respondent's agreement to repay the funds, resign from office, and be permanently banned from judicial service.

## Discussion

Respondent agrees that his conduct violated the following Code of Judicial Conduct provisions:

- Rule 1.1., requiring judges to comply with the law, including the Code of Judicial Conduct;

- Rule 1.2, requiring judges to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and avoid impropriety and the appearance of impropriety;
- Rule 2.1, prohibiting judges from allowing personal and extrajudicial activities to take precedence over the judge's judicial duties;
- Rule 2.2., requiring judges to uphold and apply the law and perform all duties fairly and impartially;
- Rule 2.5, requiring judges to perform judicial and administrative duties competently, diligently, and promptly;
- Rule 2.8(A), requiring judges to require order and decorum in proceedings before the court;
- Rule 2.8(B), requiring judges to be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and others with whom the judge deals in an official capacity;
- Rule 2.11, requiring judges to disqualify themsleves from proceedings in which the judge's impartiality might reasonably be questioned; and
- Rule 2.12(A), requiring judges to require court staff, court officials, and others subject to the judge's direction and control to act in a manner consistent with the judge's obligations under the Code of Judicial Conduct.

The parties believe that a permanent ban from judicial service with Respondent maintaining his law license is an appropriate sanction. We agree.

In Howard County, a PSC participant must advance through four phases before graduating a program.[1] The PSC teams recommend whether a participant should advance in or graduate from a program. A

---

[1] *See* "Howard County Problem Solving Courts," https://www.in.gov/counties/howard/files/ps-application_7.pdf.

participant may enter Re-Entry Court as a condition of community supervision or through a sentence modification. Participants who successfully graduate from Drug Court have their charges dismissed.[2]

Thus, the consequences of successfully completing—or, conversely, being unsuccessfully terminated from—a PSC are significant for participants. And a presiding judge's demeanor has an outsized impact on a participant's success. Respondent appeared to understand this as he wielded his position of power like a tyrant, attempting to intimidate participants and team members alike. While he offered the proverbial shirt off of his back to some, he shamed and humiliated others. These behaviors were in direct contradiction of the collaborative, non-adversarial PSC approach.

Respondent's actions also threatened the success of the Howard County PSCs as a whole, as Indiana's Problem-Solving Courts Rule 7(a)(4)[3] allows for decertification if a PSC operates in a manner that adversely affects the health and safety of any participant. Indeed, Howard County's Drug and Re-Entry courts were temporarily suspended from accepting new participants due to Respondent's misconduct. In other words, Respondent's actions directly impacted the accessibility of social services and substance use treatment in Howard County.

Respondent's other misconduct ranged from failing to recuse from cases to inadequately supervising employees to possibly misusing public funds. *See Matter of Bennington*, 24 N.E.3d 958 (Ind. 2015) (finding a permanent ban from judicial service appropriate where the respondent's wide-ranging misconduct included injudicious behavior, a misuse of judicial authority, and the failure to follow proper procedures in criminal hearings). Respondent's misconduct also began almost immediately after

---

[2] *See* "Participant Manual, Howard County Adult Drug Court Program," https://www.in.gov/counties/howard/files/adultParticipantManual.pdf.

[3] *See* Indiana Problem-Solving Courts Rules, Section 7. Denial of Application for Certification and Revocation Procedures, https://rulesqa.incourts.gov/Content/problem-solving/section7/current.htm.

he took office and continued until he became aware of the Commission's inquiry. *See Matter of Cichowicz*, 213 N.E.3d 1022, 1024 (Ind. 2023) (noting that the respondent's misconduct "permeated his entire 4-year career" as judge).

All of that said, we may also consider mitigating circumstances when determining whether the recommended sanction is appropriate. *Matter of Brown*, 4 N.E.3d 619, 628 (Ind. 2014). The parties note that Respondent has accepted responsiblity for his actions, cooperated with the Commission throughout its investigation, and completed courses via Thought Kitchen to address his demeanor. Further, Respondent had no prior attorney discipline throughout his long career, which he primarily has dedicated to public service. These facts suggest Respondent is not beyond redemption. So although a permanent ban from judicial service is necessary here to protect the integrity of the judicial system, *see id.*, we concur with the parties that he may maintain his law license. *Accord Matter of Hawkins*, 251 N.E.3d 1062, 1065 (Ind. 2025) (noting the respondent's capacity to reform).

# Conclusion

The Honorable Matthew J. Elkin shall be permanently banned from judicial service. Consistent with the parties' conditional agreement, Respondent shall tender his resignation to the Governor and leave office no later than September 30, 2025. From that time forward, he will no longer be eligible for judicial service, including as a judge *pro tempore*, temporary judge, or private judge. Respondent may retain his law license unless or until further order of the Court.

The Commission shall take no further action on the Notice of Inquiry issued on May 5, 2025, and the Notice of Investigation issued on July 16, 2025.

Rush, C.J., and Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEY FOR RESPONDENT

Jennifer M. Lukemeyer
Indianapolis, Indiana

ATTORNEYS FOR INDIANA COMMISSION ON
JUDICIAL QUALIFICATIONS

Adrienne L. Meiring, Counsel to the Commission
Stephanie K. Bibbs, Deputy Director of Litigation
Jill E. Esenwein, Staff Attorney
Mark R. Conner, Staff Attorney
Indianapolis, Indiana